UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

| | |
|---|---|
| JAMES P. GRIFFIN )<br>       Plaintiff, )<br>v. )<br>       )<br>RICHARD SILVESTRO )<br>       Defendant. )<br>       ) | COMPLAINT AND JURY DEMAND |

### INTRODUCTION

This is an action alleging violations of the plaintiff's civil rights.

### JURISDICTION

Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. §1331 as the plaintiff alleges violations of his civil rights by the defendants.

### PARTIES

1. The plaintiff is an individual who resides in Buzzards Bay, Barnstable County, Massachusetts.

2. The defendant, Richard Silvestro, is an individual who is employed by the Bourne Police Department in Bourne, Barnstable County, Massachusetts.

### FACTS COMMON TO ALL COUNTS

3. On or about February 22, 2007 at approximately 6:45 p.m. a TD Bank North branch located at 2 Barlows Landing, Pocasset, Massachusetts, was robbed at gun point by an unidentified individual.

4. The responding officers, Officer Diauto and Officer Gelson, were able to obtain a vague description of the suspect from two employees on duty at the time of the robbery, Laurianne Doble and Pamela Perry.

5. The suspect was described as a white male somewhere between 25-35 years old, roughly 5'10'' to 6' tall, weighing approximately 190-200 pounds.

6. The suspect was described as wearing a black hat, gray hooded sweatshirt, dark blue vest, and a multicolored scarf.

7. The employees also indicated that after the suspect left the bank a light blue four door sedan with a green Massachusetts license plate possibly containing a 5 or a 7 pulled out of the parking lot.

8. The light blue vehicle was thought to have headed westbound out of the parking lot down Barlows Landing Road.

9. The police officers were also able to obtain photographic evidence from security cameras set up inside of the bank.

10. Neither of the two employees was able to identify the suspect.

11. The plaintiff was a patron at the Beach House restaurant located in North Falmouth, Massachusetts on the evening of February 22, 2007.

12. On or about February 22, 2007 at approximately 6:15 p.m. the plaintiff received a call from his wife, on his cellular phone, requesting that he return to their home to watch their child so that she could run to the pharmacy and buy the child medicine.

13. The plaintiff arrived at his home at approximately 6:50 p.m.

14. On February 27, 2007 Sergeant Farrell of the Bourne Police Department spoke with a personal friend of his, Robert Roderick, who thought that the picture of the suspect he had seen on television "looked like his neighbor Griff".

15. On February 28, 2007 Sergeant Farrell showed the image of the suspect to Mr. Roderick's roommate, Frank Carpenito and he also stated that the picture "looked like Griff".

16. Mr. Roderick also stated the plaintiff's sister drove a blue vehicle.

17. The defendant, Officer Silvestro, searched the Registry of Motor Vehicles to find a blue vehicle that had a green Massachusetts license plate with a 5 or 7 that matched the description of the vehicle leaving the scene of the bank robbery.

18. The defendant did not find a vehicle that matched the description, including the plaintiff's sister's vehicle.

19. By February 24, 2007 the defendant ruled out the possibility that the plaintiff's sister's vehicle was involved in the robbery.

20. The defendant had in fact "discounted a lot of the description of the vehicle" due to the fact that it was snowing hard on the night of the robbery.

21. On March 1, 2007 the plaintiff was arrested for Armed Robbery.

22. On March 2, 2007 Patrick Bonzagni, a co-owner of the Beach House restaurant was interviewed as to his memory of the night of February 22, 2007.

23. Mr. Bonzagni recalled the plaintiff entering the restaurant at approximately 4:15 p.m. and departing at between approximately 6:15 p.m. and 6:30 p.m.

24. On March 2, 2007, Ingrid Murray, an employee of TD Bank North, who was a patron at the Beach House restaurant on February 22, 2007, was interviewed regarding her memory of that night.

25. Ms. Murray recalled taking to the plaintiff on the night in question and distinctly remembered the plaintiff telling her he was heading home to watch his child at approximately 6:15 p.m.

26. Ms. Murray was with her boyfriend, an acquaintance of the plaintiff at the time of this conversation. Ms. Murray stated she did not know the plaintiff well.

27. On March 10, 2007 an employee of the Beach House restaurant, Laureen McCann, was interviewed via telephone.

28. Ms. McCann recalled that on the night of February 22, 2007 she and a friend, Laura Tournas, entered the Beach House restaurant at approximately 5:30 p.m. and that the plaintiff was already there.

29. Ms. McCann also recalled the plaintiff leaving the Beach House restaurant at approximately between 6:15 p.m. and 6:30 p.m.

30. Ms. Tournas memory of the night of February 22, 2007 was the same as Ms. McCann's memory.

31. On April 13, 2007 the defendant testified at Grand Jury proceedings in the plaintiff's case.

32. The defendant testified as to the events surrounding the robbery of the Bank North, including the description of the suspect as well as the description of the blue vehicle that was seen leaving the scene.

33. The defendant falsely told the grand jury that Mr. Roderick and Mr. Carpenito had positively identified the plaintiff from the photos.

34. The defendant informed the grand jury that the plaintiff's sister drove a blue vehicle.

3

35. The defendant testified that while questioning the plaintiff he asked him if he knew anyone that owned a blue vehicle and the plaintiff replied 'no', but once reminded of his sister's vehicle he "admitted later, yeah my sister owns a blue car, Toyota Corolla."

36. When a grand juror asked the defendant "did you interview the sister to find out about the car" the defendant replied "the family refused to talk to us".

37. The defendant withheld from the grand jury the results of his Registry of Motor Vehicle search.

38. The defendant withheld from the grand jury the fact that he had determined the sister's vehicle was not used in connection with the robbery.

39. The defendant withheld from the grand jury information which tended to show that the plaintiff did not have time to have committed the crime.

40. The defendant falsely told the grand jury that the plaintiff "absolutely" had time to commit the crime.

41. The defendant testified to the grand jury that the plaintiff's wife positively identified the plaintiff as the person in the bank surveillance photographs, and further told the grand jury about other incriminating evidence provided by the wife, but withheld from the grand jury the exculpatory evidence of a pending divorce between the wife and the plaintiff.

42. When asked by a grand juror if the plaintiff was at the Beach House restaurant when he spoke to his wife at approximately 6:15 p.m. the defendant replied "she doesn't know where he was" and withheld information from other witnesses which proved that the plaintiff was at the restaurant at the time.

43. As a direct and proximate result of the defendant's false testimony and withheld exculpatory evidence, the plaintiff was indicted for Armed Robbery.

44. After an evidentiary hearing, on February 22, 2008 the District Attorney's Office filed a Nolle Prosequi "in the interest of justice".

45. During the course of his defense the plaintiff incurred significant expenses for attorneys and private investigators. He and his family were caused to expend over $75,000.00 (seventy five thousand dollars) in attorney's fees and costs.

<u>COUNT ONE</u>
Violation of Fourteenth Amendment
Procedural Due Process Rights

46. The plaintiff repeats and re-alleges paragraphs 1-45 above as if fully stated herein.

47. Under the fourteenth amendment the plaintiff has a clearly established right to be protected against the deprivation of his life or liberty without the due process of law

48. The defendant violated this right by artfully manipulating, falsely stating and withholding pertinent facts during his grand jury testimony resulting in the indictment of the plaintiff for a crime that the defendant knew to a reasonable degree of certainty that he did not commit.

WHEREFORE, the plaintiff, James P. Griffin, demands judgment as against the defendant, Richard Silvestro including:
1. Compensatory Damages;
2. Punitive Damages;
3. Costs of this action;
4. Reasonable attorneys' fees; and
5. Such other and further relief as this Court may deem appropriate.

THE PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted,
the plaintiff, by his attorney,

<u>/s/ Michael J. Heineman</u>
Michael J. Heineman, Esq.
BBO: 556841
Mingace & Heineman, P.C.
284 Union Avenue
Framingham, MA 01702
Dated: 10/28/2009    (508) 626-8500
MHeineman@MingaceHeineman.com

5